EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ÁNGEL TORRES ROLÓN, acusado y apelante.

*Número:* CR-70-23        *Resuelto:* 18 de mayo de 1971

*José M. Sagardía Pérez,* abogado del apelante; *Gilberto Gierbolini, Procurador General,* y *J. F. Rodríguez Rivera, Subprocurador General,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

El apelante fue acusado de una violación al Art. 8 de la Ley de Armas—portación ilegal de arma de fuego cargada, delito grave; de una violación al Art. 6 de dicha Ley—posesión ilegal de arma de fuego, delito menos grave; y de alterar la paz pública. 25 L.P.R.A. secs. 418 y 416 respectivamente y 33 L.P.R.A. sec. 1439. Fue convicto de los dos últimos delitos y absuelto del primero.

Señala tres errores. El primero consiste en impugnar la suficiencia de la prueba. Argumenta que la misma no es suficiente para sostener fuera de toda duda razonable las dos convicciones antes mencionadas.

El segundo señalamiento es al efecto de que el tribunal erró al no permitir al apelante impugnar al testigo Francisco Escudero Orozco con manifestaciones orales hechas anteriormente por dicho testigo. El tercer error señalado consiste en impugnar la corrección de las instrucciones al jurado sobre alteración a la paz. (¹)

Estamos de acuerdo con el apelante en cuanto al primer señalamiento pero no en cuanto al tercero. Debido a la conclusión a que hemos llegado en cuanto al primer error, no es necesario que discutamos el segundo.

La prueba de cargo consistió de las declaraciones juradas de los testigos Francisco Escudero Orozco, el policía Héctor Orta y Gilberto Rodríguez Ramos. La prueba de defensa consistió de la declaración jurada del apelante. Los hechos, según surgen de la transcripción de evidencia, pueden resumirse como sigue. Como a las 8 de la noche del 26 de abril de 1967 el apelante discutía en la calle con otro individuo y como ambos habían ingerido licor lo hacían en voz alta y utilizando lenguaje obsceno. El apelante entró al negocio de Francisco Escudero Orozco y desde allí continuó usando dicho lenguaje. Escudero le llamó la atención y el apelante se bajó a la calle. Escudero declaró que desde allí el apelante le dirigió palabras obscenas. Por el contrario, el apelante niega esa provocación y dice que Escudero, quién tenía un taco de billar en las manos, le ofreció darle dos tacazos.

---

(¹) La Regla 111 de Procedimiento Criminal dispone que las cuestiones de hecho en casos de delito grave y, salvo lo dispuesto en leyes especiales, en casos de delito menos grave, siempre que originalmente se presentare la acusación en el Tribunal Superior y fueren también de la jurisdicción del Tribunal de Distrito, habrán de ser juzgadas por el jurado a menos que el acusado renunciare al jurado.

En un momento durante esa situación Escudero bajó de su establecimiento y caminó hacia el apelante. En ese momento pasaba despacio por allí un carro de la policía. El apelante dice que al ver la policía Escudero se puso nervioso y la llamó. Éste declaró que llamó la policía. El automóvil se detuvo y dos policías se bajaron del mismo. Escudero declara que cuando la policía se detuvo el apelante sacó una pistola del bolsillo y la botó. El apelante niega eso y declaró que a Escudero se le cayó una vaqueta y que él, el apelante, la recogió y la retuvo en su mano derecha hasta que se la entregó al policía. Tan pronto la policía se bajó Escudero procedió a llevar a uno de ellos adonde estaba la pistola y el policía Orta la recogió.

El policía Orta no vio que el apelante poseyese la pistola y se limitó a declarar que al él bajarse del automóvil Escudero le dijo: "Véngase policía, que yo vi cuando él tiró una pistola por aquí." El policía y Escudero fueron al lugar y allí encontraron la pistola. El policía, a preguntas del fiscal, dice que la pistola era "pequeña." No tuvieron el cuidado de describirla por su marca, calibre y número de serie. (²) El otro testigo de cargo Gilberto Rodríguez Ramos, amigo o conocido de Escudero, declaró que cuando el apelante y Escudero discutían, antes de llegar la policía, el apelante se "metió la mano en el seno y se la pasó inmediatamente al bolsillo derecho" pero que no vio nada más, sino que solamente vio "el movimiento que él hizo del seno al bolsillo." Escudero siempre declaró que el apelante tenía la mano en el bolsillo y nunca mencionó que la llevase al seno o sacase nada de allí.

---

(²) No hay que ser ningún experto para describir así un arma de fuego. Los conocimientos generales que un fiscal y un policía deben tener sobre las armas de fuego corrientes les deben permitir así describirla para el récord. Por lo general las armas tienen esa información grabada y visible. A simple vista se distingue si un revólver o pistola es calibre 22 ó 32 ó 38 ó 45. Esos son los calibres más corrientes.

Al policía arrestar al apelante le ocupó la vaqueta. La declaración del policía es dudosa en cuanto a que si el apelante tenía la vaqueta en la cintura o en la mano. Luego de aquél declarar que le ocupó la vaqueta el diálogo continuó como sigue:

"P. ¿Dónde?

R. En la cintura.

P. ¿Le buscó qué?

R. O sea, le busqué, una vaqueta que tenía *en la mano derecha se la ocupé.*

P. ¿Estaba visible?

R. No, señor.

P. ¿Dónde estaba?

R. *Debajo de una camisa que él tenía.*

P. ¿Debajo de una camisa que él tenía?

R. Sí, señor.

P. ¿Cómo era la vaqueta?

R. Una vaqueta brown.

P. ¿Grande o pequeña?

R. Pequeña.

P. ¿Qué es ésto que yo le muestro en este momento?

R. Una vaqueta.

P. Esa vaqueta, que usted menciona en su testimonio y esta que yo le muestro, hay alguna relación?

R. Es la misma.

P. ¿Es la misma qué?

R. La misma vaqueta que tenía.

P. ¿Que la tenía dónde?

R. *En la cintura.*

P. Una vez que usted le ocupa la vaqueta, qué hace usted con el acusado?

R. Lo conduzco al Cuartel de Río Piedras."—T.E. I, págs. 49–50. (Énfasis nuestro.)

También hay otra inconsistencia en la prueba de cargo. Escudero declaró que cuando el apelante profería las palabras obscenas allí había una señora y dos niñas y que las mismas se fueron con motivo de las malas palabras que profería el apelante. En cuanto a la edad de las niñas Escudero dijo

"pequeñas, serían, no las ví bien, porque lo único que le veía (era) la cabecita." T.E. I, 29. Sin embargo, el otro testigo de cargo, Gilberto Rodríguez Ramos, declaró que allí había dos damas y una niña. Fijó la edad de las damas entre 35 a 40 años y la de la niña entre 13 y 14 años. T.E. II, p. 11.

El acusado, en su declaración, admitió su discusión con el otro individuo en la calle, admitió que discutieron en voz alta pero negó que utilizara palabras obscenas y admitió que Escudero le dijo que se fuera del negocio. Negó que él hubiese llevado allí la pistola y que la hubiese tirado. Dijo que Escudero lo amenazó con darle unos tacazos. Sobre el particular declaró lo siguiente:

"R. Yo le contesté que él no tenía que ofrecerme tacazos a mí porque yo no tenía ninguna, nada contra él ni había tenido discusión ni nada y entonces yo me quedé allí y él se fue para la tienda, para el colmado dentro de la tienda y entonces cuando lo ví salir yo me quedé pendiente.

P. ¿De dónde lo vio salir a él?

R. El salió del mostrador, de la tienda hacia afuera.

P. Lo primero que ocurre, ocurrió dónde?

R. Del billar y entonces él se va con el taco y entra al colmado, a la tienda y sale seguida con el taco dentro de la tienda y viene donde mí directo y cuando yo lo ví venía delante de mí, directo, él también vio la policía y él estaba nervioso y se tiró y en vez de venir donde mí se tiró a llamar la policía. Yo lo ví que se le cayó un objeto al suelo.

HON. FISCAL:

No oí.

HON. JUEZ:

Se le salió un objeto al suelo.

LCDO. SAGARDIA:

P. ¿Dónde cayó ese objeto?

R. Al lado orilla de la puerta del colmado, dentro del colmado.

P. ¿Cuando salía?

R. Cuando salía. Cuando yo lo ví así ví que era esa vaquetita que tenía él.

P. Se refiere al exhibit.

Secretario:

Número 3.

HON. JUEZ:

La vaquetita.

R. Yo la cogí y me la puse aquí en la mano derecha, deja ver lo que pasa, si algo pasa yo tengo algo para presentarla si vamos a Corte.

P. ¿Y ahí llegó la policía?

R. Llegó la policía.

P. ¿Le ocuparon a usted esta vaquetita?

R. Al ocuparla yo mismo le dije a la policía la tenía como prueba."—T.E. II, págs. 25–27.

La vaqueta en cuestión tenía las iniciales F.E.O. que son las iniciales de Francisco Escudero Orozco. Ninguna de esas letras concuerda con las iniciales del apelante, Ángel Torres Rolón. Luego de terminar de declarar el acusado, el fiscal rehusó hacerle pregunta alguna.

En resumen, nadie vio al apelante portando o poseyendo el arma. Era de noche pero Escudero Orozco pudo conducir al policía al lugar donde estaba la pistola, que según él el apelante había tirado. El apelante admite que recogió del piso la vaqueta; dice que la misma se le cayó a Escudero; que la retuvo en su mano derecha y que él mismo se la entregó al policía como prueba. La declaración del policía no conecta al apelante con el arma. Tampoco la de Gilberto Rodríguez Ramos. La declaración del policía sobre en qué parte del cuerpo tenía el apelante la vaqueta es confusa y contradictoria. Dijo que se la ocupó en la mano derecha y también dijo que la tenía en la cintura. T.E. I, pág. 49–50.

Resulta muy sospechoso el hecho de que la vaqueta de la pistola tuviese las iniciales de Francisco Escudero Orozco. La prueba de cargo es muy endeble y contradictoria. Resulta insuficiente en derecho para condenar por el Art. 6 de la Ley de Armas. Es posible que fuese el apelante el que se salvara de sufrir grave daño corporal debido a la coincidencia de que en el momento en que salía Escudero Orozco del negocio con

un taco de billar en las manos pasó por allí el automóvil de la policía.

El primer error señalado se cometió y procede revocar la sentencia que lo condenó por una infracción al Art. 6 de la Ley de Armas y absolverlo de dicho cargo. Como antes indicamos, no es necesario considerar el segundo señalamiento de error debido a la conclusión a que hemos llegado en relación con el primero.

■ El tercer señalamiento se refiere a las instrucciones al jurado sobre el delito de alteración a la paz. El planteamiento es tardío. Cuando el magistrado preguntó si se deseaban instrucciones especiales o si se deseaba hacer cualquier otro planteamiento, la defensa no objetó las instrucciones ni solicitó instrucciones adicionales. *Pueblo* v. *Del Valle*, 91 D.P.R. 174, 179 (1964). Además hemos examinado las instrucciones, la acusación y el artículo correspondiente del Código Penal, Art. 368, 33 L.P.R.A. sec. 1439, y encontramos que las instrucciones fueron suficientes.

■ La sentencia del tribunal de instancia impuesta al acusado por el delito de alteración a la paz es errónea porque se excedió del máximo que fija la ley. El citado Art. 368 del Código Penal provee para dicho delito una multa máxima de $200.00 ó cárcel por un término máximo de 90 días, o ambas penas a discreción del Tribunal. El Tribunal sentenció al apelante a seis meses de cárcel por dicho delito. Debemos corregir dicha sentencia. Vistas las circunstancias del caso, fijaremos la misma en una multa de $50.00.