EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JORGE RAMÓN GIRAU, acusado y apelante.

*Número:* CR-71-42     *Resuelto:* 8 de abril de 1974

*Rafael L. Ydrach Yordán,* abogado del apelante; *Gilberto Gierbolini, Procurador General,* y *Augusto A. Cirino, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: El apelante fue convicto de asesinato en primer grado y de posesión y portación ilegal de un arma de fuego.

Señala siete errores. Los primeros tres impugnan la suficiencia de la prueba. Mediante el cuarto ataca ciertas instrucciones al jurado. En el quinto señalamiento imputa error al tribunal por éste no haber resumido la prueba. En el sexto ataca la validez del veredicto por mayoría de nueve jurados de doce. El séptimo señalamiento no aduce error alguno sino que invoca la facultad de este Tribunal para entender en los hechos de los casos.

Los hechos pueden resumirse como sigue. El 8 de octubre de 1969, como a las 8:30 de la noche, un automóvil Corvair que transitaba por la calle que sube de La Perla hacia la planicie en donde está el Fuerte Brooke, en San Juan, se detuvo ante una señal de "Pare" que hay en aquel lugar. Iban en el asiento delantero del Corvair, su dueño Edward Matos y su acompañante Carmen Hernández. En el asiento trasero iba el occiso, Juan Lebrón Rodríguez.

Detrás del Corvair iba otro vehículo ocupado por el apelante, por José Manuel Rodríguez y por un primo de éste llamado Felipe González. El apelante conducía el carro. Al detenerse el Corvair ante la señal de "Pare," el apelante detuvo también su carro, el cual, como dijimos, iba detrás del Corvair en aquel momento, se bajó del vehículo, le dijo a sus acompañantes que lo esperasen, caminó hacia el frente hasta el Corvair, acercándose por el lado derecho de dicho

carro y le dirigió la palabra al occiso. Se suscitó una brevísima discusión entre ellos y sonó un disparo.

El apelante corrió hasta su automóvil, trató de ponerlo en marcha pero como el motor no encendía huyó corriendo hacia la playa. Sus dos acompañantes—José Manuel Rodríguez y Felipe González—le siguieron en la fuga.

Declaró José Manuel Rodríguez en el interrogatorio directo que mientras él y el apelante huían por la playa el apelante tiró un objeto al mar; que le preguntó que qué era y que el apelante contestó que era un arma. Más tarde, en el indirecto, Rodríguez negó eso. La defensa trató de establecer que José Manuel había declarado lo anterior bajo amenazas pero, contestando preguntas de la propia defensa, el testigo José Manuel dijo: "Amenazas, porque el Señor el Señor Fiscal me dijo que si yo no decía *la verdad* me iba a meter preso." (Bastardillas nuestras.) Lo cual era muy plausible porque el testigo estaba bajo juramento. Más tarde también el mismo testigo José Manuel Rodríguez dijo que había declarado "lo que sabía."

La bala, declaró el patólogo, le entró al occiso por la mejilla derecha y le interesó la arteria cerebral media derecha lo cual tuvo consecuencias que le causaron la muerte más tarde. El disparo, declaró el facultativo, fue hecho a más de dos pies de distancia. Esto parece eliminar la posibilidad de que el revólver estuviese en manos del propio occiso.

■ Hemos examinado acusiosamente el récord y estamos convencidos de que la prueba es suficiente para sostener el veredicto. No creemos necesario alargar esta opinión relatando una serie de pormenores que son irrelevantes para la decisión del caso, como por ejemplo, la forma en que el herido fue llevado al dispensario, las declaraciones de los policías que llegaron luego de ocurridos los hechos materiales, la declaración de la madre del occiso, etc. Concluimos que no se cometieron los primeros tres errores señalados.

Mediante el cuarto señalamiento se impugnan las instrucciones impartidas al jurado. En adición a que el mismo no tiene mérito, dicho señalamiento es improcedente. La Regla 137 de las de Procedimiento Criminal dispone, en lo pertinente, como sigue:

"Ninguna de las partes podrá señalar como error cualquiera porción de las instrucciones u omisión en las mismas a menos que planteare su objeción a ellas o solicitare instrucciones adicionales antes de retirarse el jurado a deliberar, exponiendo claramente los motivos de su impugnación, o de su solicitud."

Véase, *Pueblo* v. *Hernández Soto*, 99 D.P.R. 768, 777 (1971) y autoridades allí citadas; *Pueblo* v. *Torres Rolón*, 99 D.P.R. 970, 976 (1971).

■ En el caso de autos, al concluir el magistrado sus instrucciones, preguntó a las partes si tenían alguna instrucción adicional que deseaban impartir al jurado y el fiscal y la defensa contestaron que ninguna. También preguntó el juez si las partes estaban satisfechas con las instrucciones impartidas y ambas partes contestaron que lo estaban. No se cometió el cuarto error señalado.

■ En el quinto señalamiento se argumenta que el tribunal no hizo un resumen de la prueba. Dicho error no se cometió. Al terminarse de practicar la evidencia el magistrado preguntó a las partes si interesaban que el tribunal resumiese la prueba y el fiscal y la defensa contestaron que renunciaban al resumen.

■ En el sexto señalamiento se impugna la validez del veredicto del jurado por mayoría de nueve jurados de doce. Este planteamiento ha sido resuelto en forma adversa para el apelante. Véase, *Pueblo* v. *Batista Maldonado*, 100 D.P.R. 936 (1972); *Pueblo* v. *Hernández Soto*, supra, a la pág. 777 *in fine*, y 778 y autoridades allí citadas.

Como dijimos, el séptimo señalamiento no aduce error alguno sino que invoca la facultad de este Tribunal para en-

tender en los hechos de los casos. Así lo hemos hecho; hemos examinado el récord y, como expresamos antes, concluimos que la prueba es suficiente para sostener el veredicto.

*En vista de lo anterior, se confirmará la sentencia apelada en este caso.*